Filed 3/20/26  P. v. McDoughtery CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B340166 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. TA144991 |
| LESTER MCDOUGHTERY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Sean D. Coen, Judge.  Affirmed.

Linda L. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Laruen N. Gruber, Deputy Attorneys General, for Plaintiff and Respondent.

Following the passage of Senate Bill No. 483 (Stats. 2021, ch. 728) (SB 483), the trial court held a resentencing hearing under Penal Code section 1172.75 for appellant Lester McDoughtery.[1]  At the resentencing hearing, the trial court struck McDoughtery's one-year prior prison term enhancement, and otherwise reimposed his prior sentence, which included an upper term on one count, as well as an upper term enhancement on that count.  The court also denied McDoughtery's motion to dismiss his prior strike under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

On appeal, McDoughtery raises two arguments.  He first contends that the trial court violated his Sixth Amendment rights by reimposing upper terms based on factors that were neither admitted by him nor found true by a jury beyond a reasonable doubt.  This argument raises an issue that will be decided by the California Supreme Court in *People v. Eaton* (Mar. 14, 2025, C096853) [nonpub. opn.], review granted May 14, 2025, S289903 (*Eaton*): "May a trial court reimpose a previously imposed upper term sentence under Penal Code section 1172.75, subdivision (d)(4) where the facts underlying one or more aggravating circumstances were neither stipulated to by the defendant nor found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial (cf. Pen. Code, § 1170, subd. (b)(2); *id.*, § 1172.75, subd. (d)(2))?"

Courts of Appeal are split on this issue.  Following our Division's previous unpublished decisions, we reject

_____

[1]     All undesignated statutory references are to the Penal Code.

McDoughtery's contention, and conclude that the court did not err by reimposing the upper terms in the manner it did.

McDoughtery also asserts that the court abused its discretion when it denied his *Romero* motion. We reject this argument as well and affirm the judgment.

## PROCEDURAL BACKGROUND

In 2018, a jury convicted McDoughtery of two counts of criminal threats (§ 422; counts one and two) and two counts of assault with a deadly weapon (§ 245, subd. (a)(1); counts four and seven). The jury found true allegations that McDoughtery personally used a knife in the commission of counts one and two (§ 12022, subd. (b)(1)) and personally inflicted great bodily injury under circumstances involving domestic violence in the commission of count seven (§ 12022.7, subd. (e)). McDoughtery admitted that he sustained a prior strike conviction (§§ 1170.12, subds. (a)-(d); 667, subd. (a)(1)), a prior serious felony conviction (§ 667, subd (a)), and that he served a prior prison term (§ 667.5, subd. (b)). The trial court sentenced McDoughtery to 24 years and 4 months in state prison. On count seven, the court sentenced him to a four-year upper term, doubled to eight years under the Three Strikes law, plus a five-year upper term enhancement imposed under section 12022.7, subdivision (e).[2] On count four, the court imposed a consecutive sentence of one year (one-third the middle term), doubled to two years. On

---

[2]    Section 12022.7, subdivision (e) provides a range of enhancements of three, four, or five years in state prison when a person "inflicts great bodily injury under circumstances involving domestic violence in the commission of a felony or attempted felony."

3

counts one and two, the court imposed consecutive sentences of eight months (one-third the middle term), doubled to 16 months, enhanced by four months (one-third the middle term) for the knife use enhancements (in other words, 20 months on count one and 20 months on count two). The court also imposed a five-year prior serious felony enhancement (§ 667, subd (a)) and a one-year prior prison term enhancement (§ 667.5, subd. (b)).

In 2022, the trial court identified McDoughtery as an individual who, in light of SB 483 and section 1172.75, received an invalid one-year section 667.5, subdivision (b) prior prison term enhancement. Defense counsel filed a resentencing motion requesting that, in addition to dismissing McDoughtery's one-year enhancement, the court also strike his prior strike conviction and dismiss all other enhancements. In 2024, the trial court held a resentencing hearing, and dismissed the one-year prior prison term enhancement, but otherwise reimposed the prior sentence, resentencing McDoughtery to 23 years and 4 months in state prison.

McDoughtery timely appealed.

**FACTUAL BACKGROUND**

In 2019, a different panel of this court issued an opinion resolving McDoughtery's direct appeal. (*People v. McDoughtery* (Mar. 28, 2019, B289453) [nonpub. opn.].) We take judicial notice of that opinion. (Evid. Code, § 452, subd. (d).) The following is the prosecution's evidence as summarized in that opinion.

"On the evening of December 22, 2017, [McDoughtery] was at the ground-floor apartment of his girlfriend, Victoria Williams. Williams' sister, Vanessa Conley, was also present. According to Williams, the three of them were drinking alcohol and ingesting

4

cocaine; however, Conley denied that they were using drugs. At one point, [McDoughtery] became 'paranoid' and told the women to 'get in the closet.' He then turned off all the lights and went from room to room, looking out the windows. Conley, who had refused to get in the closet and said she did not like sitting in the dark, left the apartment. After she left, [McDoughtery] moved the refrigerator so that it blocked the front door. He then accused Williams and Conley of setting him up to be attacked by gang members who were outside.

"Williams was able to move the refrigerator, and Conley reentered. [McDoughtery] then moved the refrigerator back to block the door. When Conley went to turn on a kitchen light, [McDoughtery] ordered her not to do so. She replied that she was not going to sit in the dark, whereupon [McDoughtery] struck her in the head, breaking her glasses. He then pulled out a knife from the back of his pants and tried to stab Conley in the stomach. To protect herself, Conley grabbed the knife blade, and two fingers of her left hand were cut. Williams grabbed the knife handle, and the three of them struggled over the weapon.

"Conley and Williams tried to push the refrigerator away from the door, but [McDoughtery] prevented them. He called the women 'bitches,' accused them of 'trying to set him up,' and said he was going to kill them. [McDoughtery] continued to thrust the knife towards the women.

"Ultimately, the women were able to push the refrigerator from the door. Conley opened the front door a little bit and told Williams' neighbor, Gregory McCloud, who had come out of his apartment after being awakened by the sounds of the struggle, to call the police. [McDoughtery] then dropped the knife and went outside.

"Conley and Williams went to McCloud's apartment, and the police and paramedics soon arrived. Los Angeles Police Officer Vanessa Contreras, one of the responding officers, recovered the knife used in the assault from McCloud, and arrested [McDoughtery], who was standing outside Williams' apartment and tried to walk away.

"Conley later had surgery on her two injured fingers to repair severed tendons. At the time of trial, she could no longer bend the fingers.

"According to Williams, [McDoughtery] had numerous gang tattoos. Although he had lived with Williams for a time before the incident, he moved out after telling her that her apartment was in the area of a rival gang. [McDoughtery] would usually leave Williams' apartment early, because he said that his life would be in danger if he was in the area after sundown. On the night of [McDoughtery's] assault, there were no gang members or other people outside Williams' apartment." (*People v. McDoughtery*, *supra*, B289453.)

## DISCUSSION

I. **The trial court did not err in imposing upper terms**

A. Background

As noted above, the trial court reimposed an upper term on count seven and a five-year upper term enhancement on that count under section 12022.7, subdivision (e). McDoughtery argues that the trial court violated his Sixth Amendment rights by reimposing these upper terms based on factors that were neither admitted by him nor found true by a jury beyond a reasonable doubt. The trial court did not specify which

aggravating factors it relied on in reimposing upper terms.[3]  The court noted, however, that it had reviewed the People's 2018 brief from McDoughtery's original sentencing hearing.  In that brief, the People argued that the court should consider the following aggravating circumstances in imposing sentence: (1) the current offenses involved great violence; (2) McDoughtery personally used a knife; (3) the victims were particularly vulnerable; (4) the crimes were carried out in a manner that indicated planning; (5) the victim had invited McDoughtery to her residence because they were in a dating relationship, and McDoughtery took advantage of this position of trust; (6) McDoughtery had a history of violent conduct indicating a serious danger to society; (7) McDoughtery's prior convictions were numerous and of increasing seriousness; (8) McDoughtery had served prior prison terms; and (9) McDoughtery's prior performance on parole was unsatisfactory.  It thus appears that the trial court relied on some combination of those aggravating factors in reimposing upper terms, and indeed, many of those factors were never admitted by McDoughtery nor found true by a jury beyond a reasonable doubt.[4]

---

[3]     The court simply stated that it would impose the upper terms "pursuant to Penal Code section 1172.75, subdivision (d), subdivision (4)."

[4]     At McDoughtery's original sentencing hearing in 2018, the trial court, in imposing upper terms, stated it was doing so based on the "escalating nature of [McDoughtery's] crimes and [his] dangerousness to the community."

B. **Relevant Law**
1. **Senate Bill No. 567**

In 2007, the Legislature amended section 1170 to provide that "the choice between the lower, middle, and upper terms 'shall rest within the sound discretion of the court,' with the court 'select[ing] the term which, in the court's discretion, best serves the interests of justice' and stating reasons for its decision. (Former § 1170(b), enacted by Stats. 2007, ch. 3, § 2, pp. 6–7.)" (*People v. Lynch* (2024) 16 Cal.5th 730, 747 (*Lynch*).)  In enacting Senate Bill No. 567, which took effect January 1, 2022, "the Legislature . . . amended section 1170 to provide that the trial court 'shall,' in its discretion impose a sentence 'not to exceed the middle term' (*id.*, subd. (b)(1)) except in the following circumstance: 'The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of' an upper term sentence, and 'the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.'  (§ 1170 (b)(2); Stats. 2021, ch. 719, § 2)." (*Lynch*, at p. 748.)


2. **SB 483**

"Prior to January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and had not remained free of custody for at least five years." (*People v. Jennings* (2019) 42 Cal.App.5th 664, 681, citing former § 667.5, subd. (b).)  "Effective January 1, 2020, Senate Bill No. 136 (2019–2020 Reg. Sess.) [ ] (Stats. 2019,

ch. 590) amended section 667.5 by limiting the prior prison term enhancement to only prior terms for sexually violent offenses." (*People v. Burgess* (2022) 86 Cal.App.5th 375, 380 (*Burgess*).) "Enhancements based on prior prison terms served for other offenses became legally invalid." (*Ibid.*)  The Legislature later enacted SB 483, effective January 1, 2022, to make the changes implemented by Senate Bill No. 136 retroactive by adding former section 1171.1 (now section 1172.75) to the Penal Code.  (*Burgess*, at p. 380, citing Stats. 2021, ch. 728, § 1.)  Section 1172.75, subdivision (c) requires the trial court to recall an applicable sentence and resentence the defendant.

Section 1172.75, subdivision (d)(1) requires the trial court to impose "a lesser sentence than the one originally imposed . . . unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety."  At resentencing, the court "shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (*Id.*, subd. (d)(2).)  The court may also consider post-conviction factors, including the defendant's disciplinary record, his rehabilitation, and his age and physical condition affecting any risk for future violence, among other factors.  (*Id.*, subd. (d)(3).)  "Unless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Id.*, subd. (d)(4).)

9

**C. Analysis**

There is currently a split of authority whether section 1172.75, subdivision (d)(4) permits the imposition of an upper term at resentencing without the applicable aggravating factors being stipulated to by the defendant or found true beyond a reasonable doubt. The Third District held that subdivision (d)(4) of section 1172.75 "does not require aggravating factors to be found true beyond a reasonable doubt if the upper term was previously imposed." (*People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455, 458 (*Brannon-Thompson*).) *Brannon-Thompson* reached this conclusion based on its reading of the plain language of the statute, which states: "*Unless the court originally imposed the upper term*, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1172.75, subd. (d)(4), italics added.) *Brannon-Thompson* concluded that the statute plainly "carves out an exception to the general rule that all ameliorative changes to the law must be applied at a section 1172.75 resentencing and does not require aggravating factors to be found true beyond a reasonable doubt if the upper term was previously imposed." (*Brannon-Thompson*, at p. 458; accord, *People v. Mathis* (2025) 111 Cal.App.5th 359, 371-374, review granted August 13, 2025, S291628.)

The Sixth District held the opposite in *People v. Gonzalez* (2024) 107 Cal.App.5th 312, 329 (*Gonzalez*). The *Gonzalez* court acknowledged that "the plain language of section 1172.75, subdivision (d)(4), on its face, could be interpreted as not

10

requiring proof of aggravating factors before reimposing an upper term sentence." (*Gonzalez*, at pp. 328-329.)  In other words, the *Gonzalez* court recognized that *Brannon-Thompson*'s reading of the statute was intuitively persuasive.  The *Gonzalez* court ultimately concluded, however, that *Brannon-Thompson*'s reading of the statute would violate Sixth Amendment principles. (*Gonzalez*, at pp. 329-330.)  In reaching this conclusion, *Gonzalez* noted, among other things, our Supreme Court's recent decision in *Lynch*, which held that " 'a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established.' " (*Gonzalez*, at p. 330, citing *Lynch*, *supra*, 16 Cal.5th at p. 768.)  Under the doctrine of constitutional avoidance, which compels that a statute should not be construed to violate the Constitution if any other construction is viable (*People v. Garcia* (2017) 2 Cal.5th 792, 804), the *Gonzalez* court concluded that the statute should be properly interpreted as follows: "[A] defendant would be eligible for the upper term but could not receive it in the absence of aggravating factors stipulated to by the defendant or proven beyond a reasonable doubt to the trier of fact." (*Gonzalez*, at p. 330.)

Consistent with our Division's prior decisions, we conclude that *Brannon-Thompson*'s approach is the correct one.  Because we presume the Legislature did not intend to violate the constitution when it enacts a statute, we must construe a statute, where reasonably possible, as constitutional.  (*People v. Superior Court of Santa Barbara County* (2025) 18 Cal.5th 838, 857, 862.)  Section 1175.72, subdivision (d)(4) can be interpreted as constitutional by simply applying its plain text.  We therefore reject McDoughtery's argument that the trial court erred under

the Sixth Amendment by reimposing the upper term and upper term enhancement on count seven relying on aggravating factors not admitted by the defendant or proven beyond a reasonable doubt to the trier of fact.

## II. The trial court did not violate the Sixth Amendment by denying McDoughtery's *Romero* motion

At resentencing, the trial court denied McDoughtery's *Romero* motion as follows: "I [ ] realize my discretion in regards to the strike prior conviction.  Based upon the prior record and criminal history, the court will not strike the strike prior allegation."  McDoughtery argues that the court violated his Sixth Amendment rights by sentencing him under the Three Strikes law based on factors not admitted by him or found true beyond a reasonable doubt.  We are unpersuaded.

A trial court must decide whether to strike a prior strike by considering factors that are intrinsic to the Three Strike law's sentencing scheme.  (*People v. Williams* (1998) 17 Cal.4th 148, 161.)  These factors include: (1) the nature and circumstances of the current conviction; (2) the nature and circumstances of the prior strike conviction; and (3) the defendant's "background, character, and prospects."  (*Ibid.*)  The Three Strikes law establishes that not dismissing a prior strike conviction is the "norm," and there is a "strong presumption that any sentence that conforms to these sentencing norms is both rational and proper."  (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)  A trial court's decision to not strike a prior strike is reviewed for abuse of discretion (*id.* at p. 374), and accordingly, it is not enough that reasonable people might disagree with the decision not to grant a

12

*Romero* motion (*id.* at p. 378). "We presume the trial court has considered all relevant factors in the absence of an affirmative record to the contrary," and that it "correctly applied the law." (*People v. Edwards* (2022) 76 Cal.App.5th 523, 529.)

McDoughtery does not argue that the trial court abused discretion by denying his *Romero* motion. He does not, for example, contend that the trial court relied on factors that fall outside the Three Strikes law inquiry, or that no reasonable judge could have denied his motion. As mentioned above, he asserts that the court violated his Sixth Amendment rights by denying his *Romero* motion based on facts not admitted by him or found true by a jury beyond a reasonable doubt. The Three Strikes law, however, is an alternative sentencing scheme, not an enhancement. (*People v. Dowdy* (2024) 107 Cal.App.5th 1, 9.) When a court denies a *Romero* motion, it is not increasing or enhancing a sentence. Rather, it is declining to exercise its discretion to lower a sentence "in the furtherance of justice." (*Romero, supra,* 13 Cal.4th at p. 507.) Accordingly, the trial court did not violate McDoughtery's Sixth Amendment rights by denying his *Romero* motion based on his criminal history.[5]

---

[5] Because we reject McDoughtery's argument on the merits, we need not address the Attorney General's argument that McDoughtery forfeited it.

**DISPOSITION**

We affirm the judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


TAMZARIAN, J.

We concur:


COLLINS, Acting P. J.


MORI, J.